The original bill of complaint filed in this matter on December 26th, 1941, sets forth alleged violations by the defendants ofN.J.R.S. 56:4-3 et seq., commonly called the "Fair Trade Act." An order to show cause having issued why injunctive relief should not be granted, the defendants filed opposing affidavits and the application for a preliminary injunction was denied January 26th, 1942.
Complainant filed an amended bill of complaint on May 6th, 1942, alleging that the violations of its minimum resale prices by the defendants had continued from November, 1941, continuously to May, 1942. *Page 255 
The defendants urged that the bill of complaint as amended failed to state a cause of action in view of the Federal Emergency Price Control Act of 1942 and the Regulations of the Federal Price Administrator issued thereunder, and moved to strike upon the ground that the record shows the continuous sale by the defendants below the complainant's fixed prices. The proofs disclose that at all times during the month of March, 1942, the defendants sold the complainant's products at prices below complainant's so-called fair trade schedule.
The Emergency Price Control Act enacted on January 30th, 1942 (Public Law 421 ch. 26, 77th Congress, 2nd session,56 Stat. 23, U.S. Code Congressional Service, 1942, page 23), section205 (d) provides that "in any suit or action wherein a party relies for ground of relief or defense upon this Act or any regulation, order, price schedule, requirement or agreement thereunder the court having jurisdiction over such suit or action shall certify such fact to the Administrator. The Administrator may intervene in any such suit or action." On June 9th, 1942, a certificate in conformity with this provision was issued by the court. On June 26th, 1942, the Federal Price Administrator declined to intervene.
The Price Administrator by the Act is empowered to promulate rules, regulations and orders within the bounds of the definite standards set up by the act (E.P.C.A. § 2 (a); § 201
(d)). In pursuance of this power, the Price Administrator on April 28th, 1942, issued General Maximum Price Regulations Bulletin No. 1, effective May 11th, 1942, imposing a price ceiling upon commodities generally and including the products of the complainant involved in this suit. This Price Regulation prevents retailers from charging prices higher than the maximum prices which they charged during March of 1942. It provides inparagraph 1500.1:
"Prohibition Against Dealing in Commodities or Services Above Maximum Prices. On and after the effective date of this Regulation, regardless of any contract or other obligation:
"(a) No person shall sell or deliver any commodity, and no person shall sell or supply any service, at a price higher than the maximum price permitted by this Regulation; and *Page 256 
"(b) No person in the course of trade or business shall buy or receive any commodity or service at a price higher than the maximum prices permitted by this Regulation."
The highest prices at which defendants sold complainant's products during the month of March, 1942, were below complainant's so-called fair trade schedules. Complainant alleges that the defendants have violated its fair trade contract and are thereby precluded from pleading the Federal Price Administrator's Regulations notwithstanding such Regulations by their terms operate "regardless of any contract or other obligation" and there is nothing in the Emergency Price Control Act or in the Price Administrator's Regulations which excepts contracts made under the Fair Trade Act from this provision. The Price Administrator has thus prohibited the defendants from selling complainant's products at prices higher than those charged by the defendants in March of 1942 and that order is controlling unless it constitutes an abuse of the power granted under the Federal Emergency Price Control Act. The Administrator regulates prices under the power of Congress, a portion of which has been delegated to him. The authority of the federal government is supreme with respect to matters which are delegated to it by the federal constitution even though the exercise of such authority may interfere with the effective application of the laws of a state. Florida v. Mellon (1927), 273 U.S. 12 (at p.17); Cummings v. Chicago (1903), 188 U.S. 410 (at p.428).
Complainant points out that in this instance the application of the Emergency Price Control Act impairs the obligations of its contracts made under the Fair Trade Act. Such an impairment is valid under the war power of Congress. Brown Holding Co. v.Feldman (1921), 256 U.S. 170: Home Building and LoanAssociation v. Blaisdell (1934), 290 U.S. 398; UnitedStates v. MacIntosh (1931), 283 U.S. 605, 622. The District of Columbia rent regulations imposed during the first World War were upheld on this basis. Block v. Hirsh (1921),256 U.S. 135. See, also, Levy Leasing Co. v. Siegel
(1922), 258 U.S. 242, and Brown Holding Co. v. Feldman,supra. *Page 257 
Under its police power a state may constitutionally fix prices where it does so for the protection of the public interest.State Board of Milk Control v. Newark Milk Co. (1935),118 N.J. Eq. 504; 179 Atl. Rep. 116; Olsen v. Nebraska (1941),313 U.S. 236; Nebbia v. New York (1934), 291 U.S. 502.
Although the federal government has no general police power, the limitations placed upon Congress by the Fifth Amendment are the same as those imposed on the several states by the Fourteenth Amendment. Hamilton v. Kentucky Distilleries and W. Co.
(1919), 251 U.S. 146, 156. Therefore, the war power of Congress may be exercised under a price-fixing statute where the public interest requires such protection in order to prevent inflation. Highland v. Russell Car and Snow Plow Co.
(1929), 279 U.S. 253. See the dissenting opinion of Mr. Justice Stone in Tyson Bro. v. Banton (1927),273 U.S. 418, 447.
Since January 30th, 1942, price regulation has been carried on under the Emergency Price Control Act, a specific exercise of the war powers of Congress. The effective enforcement of this price-fixing statute necessitated extensive delegations of power by the legislative branch of the government to an administrative body. Thus section 2(a) of the Emergency Price Control Act, dealing with the Price Administrator, provides that whenever prices "have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this act."
Conditions are imposed by section 2(a) upon the exercise by the Price Administrator of this grant of authority. He must (1) give due consideration to the prices prevailing for commodities between October 1st and October 15th, 1941; (2) he must continually adjust his Regulations on the basis of all facts which are relevant and which he may determine to be of general applicability to the commodity involved, and (3) he must accompany every regulation or order with a *Page 258 
statement of the considerations involving its issuance. A legislative delegation of power to an administrative agency is constitutional when the legislation itself sets up the necessary standards which are required by adjudications of the United States Supreme Court for the guidance of the agency created to administer the law. Sunshine Anthracite Coal Co. v. Adkins
(1940), 310 U.S. 381; United States v. Rock RoyalCo-Operative, Inc. (1939), 307 U.S. 583; Panama Refining Co.
v. Ryan (1935), 293 U.S. 388, 421; State Board of MilkControl v. Newark Milk Co., supra.
Under the Fair Labor Standards Act (52 Stat. 1064 (1938);29 U.S.C.A. § 208, Supplement 1939), Congress empowered the Federal Wage Administrator to fix minimum wages in various industries but required him in doing so to consider "among other relevant factors" competitive conditions as affected by transportation, living and production costs, and wage scales as established by collective bargaining or by voluntary minimum wage standards. The United States Supreme Court upheld that congressional delegation of power in the leading case of OppCotton Mills, Inc., v. Administrator (1941), 312 U.S. 126
(at p. 144), pointing out that "* * * where, as in the present case, the standards set up for the guidance of the administrative agency, the procedure which it is directed to follow and the record of its action which is required by the statute to be kept or which is in fact preserved, are such that Congress, the courts and the public can ascertain whether the agency has conformed to the standards which Congress has prescribed, there is no failure of performance of the legislative function."
Congress has complied with these rules in the Emergency Price Control Act by requiring the Price Administrator to give consideration to "speculative fluctuations," general increases or decreases in costs of production, distribution, and transportation and general increases or decreases in profits earned by sellers of the commodity during and subsequent to the year ended October 1st, 1941.
Similar delegations of power by our state legislature to an administrative officer or body have also been upheld. Veix v.Seneca Building and Loan Association (Court of *Page 259 Errors and Appeals, 1940), 126 N.J. Law 314; 19 Atl. Rep.
2d 219, and cases cited therein (at pp. 321 et seq.).
The Supreme Court of New York has recently dealt with a similar conflict between the provisions of the Fair Trade Act of the State of New York (Feld-Crawford Act, article 24 (a),section 369-b, General Business Law) and the regulations of the Federal Price Administrator in Schrier et al. v. Siegel etal., N.Y.L.J., July 8th, 1942, p. 59, col. 1. Plaintiffs sought a preliminary injunction against the violation of the state Fair Trade Act. Defendants interposed the Federal Price Regulation as a defense. Mr. Justice Eder denied the application for the reason "that all of the violations complained of occurred prior to the effective date of the Administrator's price fixing, or price `freezing' order. * * *"
The defendants in that case also contended "that the enactment of this federal act has, during its operative period, rendered wholly impotent the state Fair Trade Law and violations thereof may be indulged and that they cannot be made the basis of an action for redress in the state courts; that the effect of the federal enactment is the abrogation of the state law." The court expressly declined to subscribe to this viewpoint and held that "this federal statute does not prohibit or bar a suit brought pursuant to the state Fair Trade Law. * * *" No contention of that nature has been made by the defendants in this case and I do not pass upon that question.
The mandate of the Emergency Price Control Act and the General Maximum Price Regulation Bulletin No. 1 issued by the Price Administrator is clear and must be held to apply "regardless of any contract or other obligation." Where, as here, a conflict arises between a so-called fair trade contract or schedule made under the Fair Trade Act and Regulations duly promulgated by the Federal Price Administrator, the Regulations must control. In the light of these Regulations, the amended bill of complaint filed herein fails to set forth a cause of action calling for equitable relief and the bill will be dismissed.
 Present an order in accordance with these conclusions. *Page 260