**UNITED STATES v. HARK et al.**
**Cr. No. 16021.**

District Court, D. Massachusetts.
March 5, 1943.

96

Joseph J. Gottlieb, Asst. U. S. Atty., of Boston, and Edmund J. Brandon, U. S. Atty., Boston, Mass., for the United States.

John H. Backus, Leonard Poretsky, and William H. Lewis, all of Boston, Mass., for Hark and Yaffee.

William C. Maguire, of Boston, Mass., for Hark.

SWEENEY, District Judge.

To this indictment the defendants have filed a demurrer, motions to quash, and pleas in abatement. In these pleadings they attack the constitutionality of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901 et seq., as being both an improper use of the war power by Congress, and an improper delegation by Congress of its legislative function to an administrative agency. They also insist that the defendants' rights under the Fourth and Fifth Amendments to the Constitution have been invaded, and further allege that the Government is without authority to prosecute this indictment, because Maximum Price Regulation No. 169, Sections 1364.51 and 1364.52, were revoked prior to the return of this indictment. It is this last contention that gives the court the most concern.

 The constitutionality of this Act, as it relates to the ceiling on rents, has been sustained by a three-judge court in Henderson v. Kimmel, D.C., 47 F.Supp. 635, as a legitimate exercise of the war power of Congress which is broad and "well-nigh limitless." United States v. MacIntosh, 283 U.S. 605, 624, 51 S.Ct. 570, 575, 75 L.Ed. 1302. All the reasoning of that decision and the many others sustaining the war power of Congress apply with equal force to the price control features of the Act in question. See Helena Rubinstein, Inc., v. Charline's Cut Rate, Inc., 132 N.J.Eq. 254, 28 A.2d 113. In the exercise of its very broad power to adopt measures which it deems essential to the war success Congress has intervened in many diverse fields. The Supreme Court has upheld such interferences with property as the taking over and operation of railroads (Northern Pacific Railway Co. v. North Dakota ex rel. Langer, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897), and the taking over and operation of telephone and telegraph lines (Dakota Central Telephone Co. v. South Dakota ex rel. Payne, 250 U.S. 163, 39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623), and has approved the invasion of the freedom of the individual by compulsory military service both at home and abroad. (Arver et al., v. United States, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856). The power to enact the Emergency Price Control Act of 1942 cannot be seriously questioned in the light of these decisions. Indeed, it would be a strange situation to grant that Congress has the power to take men from their homes and to send them to war, and to deny that Congress has the right to prevent profiteering by those supplying food to their dependents.

■ Nor is the exercise of this broad power weakened constitutionally by the delegation of its power under proper standards to those charged with the administration of the Act. Congress has set forth the objectives in Section 1(a), 50 U.S.C.A. Appendix § 901(a). To attain these objectives maximum price regulations were authorized to be promulgated, the procedure for which is set out in Section 2(a), 50 U.S.C.A. Appendix § 902(a). There is no loose and general delegation of authority here as in Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and Schechter Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. The delegation here is specific and limited by the very terms of the Act.

Congress in the exercise of its legislative function has determined the legislative policy and its formulation as a rule of conduct, by specifying the basic conclusions of fact upon ascertainment of which, from relevant data by a designated administrative agency, it ordains that its statutory command is to be effective. Opp Cotton Mills v. Administrator, 312 U.S. 126, 145, 61 S.Ct. 524, 85 L.Ed. 624 (dealing with the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.); see, also, Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (dealing with the Bituminous Coal Act of 1937, 15 U.S.C.A. §§ 828 et seq.), and United States v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (dealing with the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq.). I therefore conclude that the delegation was not improper, and it follows that the Act is not unconstitutional, either by reason of a want of power in Congress to enact the statute, or by reason of an improper delegation of authority to the administrative officer charged with enforcement of the Act.

The question whether the prosecution of this indictment can be maintained is a very bothersome one. Maximum Price Regulation No. 169 was promulgated effective July 20, 1942. On December 10, 1942, Revised Maximum Price Regulation No. 169 was issued to be effective December 16, 1942. While this purported to be an amendment to the original regulation, it provided that "Sections 1364.51 through 1364.67 are revoked". All counts of the indictment are based on Section 1364.52.

The indictment was returned to the District Court on December 21, 1942.

■ The common law rule was that on the repeal of an act without any reservation of its penalties, all criminal proceedings taken under it fell. United States v. Reisinger, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480. See, also, United States v. Borke, D.C., 5 F.Supp. 429; United States v. Gibson, D.C., 5 F.Supp. 153; United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510; Hutchens v. United States, 5 Cir., 68 F.2d 1006; Cornerz v. United States, 5 Cir., 69 F.2d 1002; Cossiboin v. United States, 5 Cir., 69 F.2d 1002; Goldberg v. United States, 5 Cir., 69 F.2d 1005; Martino v. United States, 5 Cir., 69 F.2d 1010; Miller v. United States, 5 Cir., 69 F.2d 1011; Landen v. United States, 6 Cir., 299 F. 75; Vincenti v. United States, 4 Cir., 272 F. 114. The basis of this rule was a presumption that the repeal was intended as a legislative pardon for past acts. 22 C.J.S., Criminal Law, § 27b (4). To avoid the application of this rule Congress passed 1 U.S.C.A. § 29, which reads as follows: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

■ The effect of this statute is to prescribe a rule of construction different from the common law rule that is binding upon the courts in all cases covered by it, but it refers only to "repeal of any statute", and does not refer to regulations or orders thereunder. Since this prescription is in derogation of the common law rights of persons accused of crime it is to be strictly construed and is limited to the repeal of statutes. The Emergency Price Control Act of 1942 is not self-operative, and the type of crime which is charged in this indictment could not come into existence until regulations had been promulgated by the administrator under legislative authority delegated to him by Congress. In other words, so far as the price control features of the Act are concerned, the statute needed implementing regulations before a crime could be committed. The findings of fact incidental to, and the promulgation of, implementing regulations

are steps in the legislative function. See Opp Cotton Mills v. Administrator, supra. Congress has not seen fit to include regulations in the wording of its general saving clause, 1 U.S.C.A. § 29, and neither has the Congress or the administrator effected any other saving clause that would be applicable to Maximum Price Regulation No. 169. It would seem that Congress has empowered the administrator to insert a saving clause in any amended regulation for in Section 2(g), 50 U.S.C.A. Appendix § 902(g) it is provided that: "Regulations, orders, and requirements under this Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof." And if not contained in this section I think that the authority might be implied generally, but if there is no power in the administrator to add a saving clause in his regulations, then the power rests complete in Congress.

In Section 1(b) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901(b), Congress has particularly provided a saving clause that will permit prosecutions after the Act has been terminated either "on June 30, 1944, or upon the date of a proclamation by the President, or upon the date specified in a concurrent resolution by the two Houses of the Congress, declaring that the further continuance of the authority granted by this Act is not necessary in the interest of the national defense and security, whichever date is the earlier", but, again, this saving clause applies to the termination or repeal of the Act in any of the three manners specified. It has no application to the revocation of sections of a regulation.

Inasmuch as this is a criminal matter in which all doubts should be resolved in favor of the accused, and, since I doubt very much that a prosecution can be maintained under this indictment, I think that the question of the Government's right to proceed should be finally determined before entering into a possibly long and expensive trial on the merits. The United States has a right of appeal under 18 U.S.C.A. § 682. I therefore rule that these defendants cannot be held to answer to this indictment, because of the revocation of Section 1364.-52 of Maximum Price Regulation No. 169, upon which the counts of the indictment are based, prior to the return of the indictment by the grand jury.

The motion to quash is granted.

Where bankrupt was an unincorporated association, membership in which was attained by becoming successively a member of each of three subordinate bodies and treasurer of the bankrupt was also treasurer of the three subordinate bodies, and initiation fees and dues paid by members of subordinate bodies were turned over by treasurer to trustees of bankrupt, subordinate bodies were not entitled to fund which came from dues and initiation fees and income from operation of building owned by bankrupt, as against bankruptcy trustee.