### The People of the State of New York, Plaintiff, *v.* Juliet Roth, Defendant.

City Magistrate's Court of New York, Staten Island Court, Borough of Richmond, September 24, 1943.

*Ignatius M. Wilkinson, Corporation Counsel (F. J. Horan of counsel), for plaintiff.*

*Henry Klauber* for defendant.

KEUTGEN, C. M.   The defendant is charged with having violated certain regulations of the New York State War Council which, in turn, adopted ceiling prices established by the United States Office of Price Administration, in that, on June 18, 1943, at 334 St. Marks Place in the county of Richmond, she offered for sale one pound of Crisco at twenty-nine cents per pound when the ceiling price was twenty-seven cents per pound and one twenty-ounce can of White Rose tomato juice at twelve cents when the ceiling price for the can was ten cents. The foregoing facts were duly established and are not contradicted.   It was further shown that the ceiling prices mentioned were promulgated by the District Office of Price Administration for the district which includes Richmond County, New York, prior to the date of sale, and that on or about the date when these ceiling prices were adopted, they were published in the *New York Times* and the *New York Herald Tribune,* newspapers of general circulation throughout the city of New York.

Ceiling prices were created by the Congress of the United States by the Emergency Price Control Act of 1942 (Act of January 30, 1942, and amendments; U. S. Code, tit. 50, Appendix, § 901 *et seq.*). This Act, so far as here material, states the intent of the Congress and the legislative policy as follows: " Section 1. (a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living * * *." [U. S. Code, tit. 50, Appendix, § 901, subd. (a).]

To implement this policy and accomplish the results to be attained, the Act further provides in section 2 (a): " Whenever in the judgment of the Price Administrator (provided for in section 201 (section 921 of this appendix)) the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. * * * Every regulation or order issued under the foregoing provisions of this subsection shall be accompanied by a statement of the considerations involved in the issuance of such regulation or order." [U. S. Code, tit. 50, Appendix, § 902, subd. (a).]

In section 3, the declared purpose of the Act is contradicted by provisions depriving the Price Administrator of any control over prices of agricultural commodities which make up about half of the cost of all food consumed. (U. S. Code, tit. 50, Appendix, § 903.)

In subsequent sections, machinery is provided for an appeal to a special court created by the Act to review any ceiling price claimed to be unreasonable and formulas are provided for arriving at reasonable prices. The Price Administrator is also given authority to delegate to his subordinates the powers given to him.

In his administration of the Act, the Price Administrator has divided the United States into several " regions " each consisting of a number of States. These regions are further subdivided into districts of varying size.

Richmond County is in region II which includes the States of New York, New Jersey, Pennsylvania, Maryland, Delaware, and the District of Columbia. The Regional Administrator is Mr. Sylvan Joseph. The district in which Richmond County is situated is called the New York District and includes the entire city of New York and certain adjacent counties.

The business of fixing ceiling prices is accomplished by means of orders issued by the Price Administrator and his various subordinates. As to the proper issuance of such orders, in sections 301 to 307 of title 44 of the United States Code, it is provided that the filing of a certified copy or duplicate original of any such order with the Division of Federal Register in the office of the Public Printer in Washington, D. C., shall be sufficient to give notice of the contents of such order to any person affected thereby. Publication of such order in the Federal Register creates a presumption that it is valid and effective.

General Order No. 51 of Price Administrator Prentiss M. Brown, dated May 6, 1943, filed and duly published on May 8, 1943, in the Federal Register (8 Fed. Reg., p. 6008) provides in part as follows: " Any regional office of the Office of Price Administration, and such other offices as may be authorized by the appropriate regional office, may, for sales at retail of any food item in any area or locality within its jurisdiction, fix community (dollars-and-cents) ceiling prices * * *."

By this order, it was required that any office issuing an order under the authority of the General Order shall, at least one day before the effective date of such order, cause the order to be published in a newspaper having general circulation in the area or locality affected. This provision, however, was later repealed by the Administrator and there is now no requirement of publication in the locality.

Pursuant to the authority given under General Order No. 51 and on May 7, 1943, Sylvan Joseph, Regional Administrator of Region II, which includes the State of New York, by telegram (People's Exhibit 6) authorized the District Manager of the District Office for the New York District to exercise the same powers and functions which were conferred upon Mr. Joseph by General Order No. 51. It was pursuant to this authority that the prices in this case were fixed by the New York District Office.

In this case, these ceiling prices are being enforced by certain inspectors of the Department of Markets of the City of New York, acting as representatives of the War Council of the State of New York. The War Council of the State was created by chapter 544 of the Laws of 1942 as a council to take the place of the New York State Council of Defense, created by chapter 22 of the Laws of 1941. This council is empowered, among other things (§ 7, subd. 6): " To adopt and promulgate in this state any rationing, freezing, price fixing or other order or regulation imposed by the authority of the federal government; and to adopt rules and issue orders with respect to the enforcement of any such rationing, freezing, price fixing or other order or regulation."

By resolution No. 294, adopted April 28, 1943 (published May 8, 1943, in the Official Bulletin of the N. Y. S. War Council, Vol. 2, No. 20, p. 222), the New York State War Council ordered the blanket adoption for the purpose of enforcement of all regulations and orders established by the Price Administrator pursuant to the Emergency Price Control Act of 1942 and directed that every violation of any such regulations or orders should constitute and be an infraction of an order of the War Council triable and punishable pursuant to the provisions of the New York State War Emergency Act. (L. 1942, ch. 544, as amd.) Section 101-a of that Act (amd. L. 1943, ch. 171) provides, among other things, that an " infraction " committed within the territorial jurisdiction of a Magistrate's Court of the City of New York shall be within the jurisdiction of that court to hear and determine. Thus a complete chain of authorizations has been shown together with statutory authority for the jurisdiction of this court in the prosecution of this action.

The defendant, while admitting the facts, challenges the constitutionality of any judgment convicting her in this proceeding.

So far as the constitutionality of the Emergency Price Control Act is concerned, the People cite as authority *Highland* v. *Russell Car & Snow Plow Co.* (279 U. S. 253), decided by the United States Supreme Court in 1929, upholding the constitutionality of the Lever Act, an act of Congress passed during World War I, authorizing the President to fix the price of coal. Since then, the membership of that court has almost completely changed and ancient precedents are now frequently disregarded. However, the specific question of the constitutionality of this Act of 1942 has been challenged a number of times since its original passage, and ten of the United States district

courts held in seven different States have passed upon the question of its validity. In each of these cases, the constitutionality of the Act has been upheld. These cases are: *Henderson* v. *Kimmel* (47 F. Supp. 635 [Kans. Oct. 23, 1942]); *Dieffenbaugh* v. *Cook* (47 F. Supp. 645 [Ind. Nov. 11, 1942]); *Brown* v. *Wick* (48 F. Supp. 887 [Mich. Feb. 19, 1943]); *United States* v. *C. Thomas Stores* (49 F. Supp. 111 [Minn. Feb. 26, 1943]); *United States* v. *Slobodkin* (48 F. Supp. 913 [Mass. Mar. 2, 1943]); *United States* v. *Hark* (49 F. Supp. 95 [Mass. Mar. 5, 1943]); *United States* v. *Friedman* (50 F. Supp. 584 [Conn. Mar. 25, 1943]); *United States* v. *Sosnowitz & Lotstein* (50 F. Supp. 586 [Conn. Mar. 25, 1943]); *United States* v. *Beit Bros.* (50 F. Supp. 590 [Conn. May 4, 1943]); *United States* v. *Tire Center* (50 F. Supp. 404 [Del. June 10, 1943]).

In the face of these authorities, it does not seem to me in order for this court to give independent consideration to the constitutionality of the Act. I regard these authorities as binding upon me so far as the constitutionality of the Federal law is concerned.

As to the State law, it will be observed that the State of New York does not presume to legislate independently upon the subject but is merely undertaking to co-operate with the Federal Government by promulgating regulations identical with the Federal regulations and then enforcing these regulations. The prices fixed by these regulations are not claimed to be so unreasonable as to take defendant's property without due process of law, and as they are within the powers granted by the Federal Constitution, so also are they valid under the Constitution of the State.

The only real attack that has been made in this case upon the action of the New York authorities is the claim that obedience has not been given to section 22 of article VI of the State Constitution, which provides that the Legislature shall provide for the speedy publication of all statutes. In pursuance of the constitutional mandate, the Legislature has provided, particularly in sections 45 and 48 of the Legislative Law, for the printing and binding of all session laws adopted by the Legislature and for the publication of all laws of a general nature passed by the Legislature. The price ceilings adopted for the purpose of enforcement by the War Council of the State of New York are merely regulations or resolutions of that bureau and therefore are not required by the Legislative Law or the Constitution to be published.

To the claim that the legislative power of the State is vested in the State Legislature consisting of the Senate and Assembly and that it may not be transferred to a bureau or to the War Council, the answer is that the Congress and the Legislature did exercise the legislative power: the Congress, by ordaining that maximum or ceiling prices should be established and by writing the rules according to which the bureau established by the Congress should compute and fix such prices, that is, such as in the judgment of the Price Administrator are fair and equitable; the Legislature, by specifically authorizing its bureau to adopt, for purposes of enforcement, the action of the Congress and its bureau.

All that this court has dealt with or can deal with is the power under the State and Federal Constitutions of our legislative bodies to adopt this kind of legislation. The wisdom and policy of these statutes are not in issue. We are not even considering the practicability of all the small shopkeepers, in New York City (and there must be over 100,000 of them) making frequent trips to the Empire State Building to find out whether they are violating the law. According to the present decisions of the Federal courts, there is nothing in our fundamental law which forbids this new " noble experiment " and it will go on.

The defendant is found guilty and fined ten dollars.