THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MICHAEL D'ESPOSITO, Defendant.

City Magistrate's Court of New York, Staten Island Court, Borough of Richmond, January 13, 1944.

*Ignatius M. Wilkinson, Corporation Counsel* (*Gilbert Gottlieb* and *Murray Rudman* of counsel), for plaintiff.

*Paul Seigel* for defendant.

KEUTGEN, C. M. (orally). In this case, the People on the complaint of Elsie A. Weber against Michael D'Esposito, the defendant is charged with selling four and one-half pounds of apples, one head of lettuce, and one pound of yellow onions, each above the respective ceiling prices.

In the case of each of these commodities, the Price Administrator has fixed a ceiling price for the commodity with the name stated; that is, there is a ceiling price, for example, of apples, of ten and one-half cents per pound without any distinction between the kinds and grades of apples.

Under the plea of not guilty the defendant did not seriously contradict the allegations of the complaint, but claimed that the

action of the Price Administrator in fixing a general price for apples and similarly for the other commodities had acted unreasonably and arbitrarily and beyond the powers given to him by the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*). It appeared in evidence, and, indeed, it is a matter of common knowledge, that apples, for example — and what I say is equally true of the other commodities — are sold in the open market in several different grades and a different price exists for each of the grades; that this custom has continued in the trade for many years; and that to fix a price for apples and to require all apples of all kinds to be sold at one price constitutes a very serious upheaval to the trade.

In either one of two lines of reasoning, the action of the Price Administrator is open to criticism. In the first place, in the trade there is no such commodity as apples, without qualification, and, when the Price Administrator fixed a price for apples, he was going beyond the authorization given him which, in the words of the statute, is: " Whenever in the judgment of the Price Administrator (provided for in section 201) the price or prices of *a commodity or commodities* have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act." (Act, § 2; U. S. Code, tit. 50, Appendix, § 902.) (Emphasis supplied.)

" A commodity or commodities " means certainly a commodity known to and traded in the general market and the commodities traded in in the general market are such commodities as " Fancy Eating Apples ", " Washington State Apples ", " Greening Apples ", " Windfalls ", rather than merely " Apples ".

Reasoning along another line, it appears that the authority of the Price Administrator is limited to the fixing of prices. When it comes to making such a regulation as is here involved, there is something more than the regulation of prices. There is a complete regulation of the trade. So that in either case, the Price Administrator in this case appears to have gone beyond the power and duty given him by the mandate of Congress.

However, it remains to be considered whether this court has power to deal with this situation to the extent of treating the

matters alleged as a defense to this charge. The present case is prosecuted under the New York State War Emergency Act (L. 1942, ch. 544, as amd.), and under that law (§ 7, subd. 6) the War Council is authorized by the State Legislature " to adopt and promulgate in this state any rationing, freezing, price fixing or other order or regulation imposed by the authority of the federal government; and to adopt rules and issue orders with respect to the enforcement of any such rationing, freezing, price fixing or other order or regulation." Pursuant to that authority, the State War Council adopted generally all of the regulations of the Price Administrator. (Resolution No. 294, adopted April 28, 1943, published May 8, 1943, in the Official Bulletin of N. Y. S. War Council, Vol. 2, No. 20, p. 222.) I will not deal with that in detail. The machinery whereby the result was accomplished was recently considered by this court and the entire course of dealing between the Office of Price Administration and the State War Council is outlined in *People v. Roth* (181 Misc. 612). It is beyond question, so far as this State is concerned, that a defendant in a criminal case has a right to assert the invalidity of the law, regulation or rule under which he is being prosecuted. (*Wallack* v. *Society, Etc.,* 67 N. Y. 23; *Lee* v. *O'Malley,* 140 App. Div. 595; *Buffalo Gravel Corporation* v. *Moore,* 201 App. Div. 242, affd. 234 N. Y. 542; *Cowan* v. *City of Buffalo,* 157 Misc. 71, affd. 247 App. Div. 591.)

The Emergency Price Control Act of 1942, the act of Congress, outlines a special procedure for dealing with any mistakes of the Price Administrator. Under section 203 of that Act, which is section 923 of the Appendix to title 50 of the United States Code, a person aggrieved may file protest with the Price Administrator within sixty days after issuance of any regulation or order, or, if he is aggrieved by a price schedule, he may file the protest within sixty days after the schedule becomes effective.

The Act then proceeds to create a new and special court of the United States which is known as the Emergency Court of Appeals, to consist of three judges selected by the Chief Justice of the United States from among the United States district judges and the judges of the United States Circuit Court of Appeals. If the protest is rejected by the Administrator, then an appeal is taken to the Emergency Court of Appeals and an appeal may also be taken from the Emergency Court of Appeals to the United States Supreme Court.

In such a proceeding, the burden of proof is placed upon the applicant, the person aggrieved; that is, by subdivision (b) of section 204 of the Emergency Price Control Act [U. S. Code, tit. 50, Appendix, § 924, subd. (b)], " No such regulation, order or price schedule shall be enjoined or set aside, in whole or in part, unless the complaint establishes to the satisfaction of the court that the regulation, order, or price schedule is not in accordance with law, or is arbitrary or capricious."

After providing this machinery for the review of the action of the Price Administrator, subdivision (d) of section 204 provides as follows: " The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of any such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision." [Act, § 204, subd. (d); U. S. Code, tit. 50, Appendix, § 924, subd. (d); see, also, §§ 902, 926.] And that restriction, so far as it affects the United States District Courts, has been upheld in *Lockerty* v. *Phillips* (319 U. S. 182, affg. 49 F. Supp. 513).

The question, therefore, is whether that limitation applies to the courts of the State of New York when the proceeding is under the State law. The answer, it seems to me, depends upon the application of a very fundamental principle of the law of the land in which we live. As to certain things, the Congress is authorized to legislate under the Constitution. As to certain things, the power of legislation is reserved to the States. The matter that we are dealing with here is a matter of war legislation and it is almost inconceivable that this legislation would be upheld except under the war power. But, when the Congress has legislated as to a matter within its scope, then the Congressional legislation, the Federal legislation, is supreme. It is scarcely necessary to quote authority, but you might refer to an excerpt from *M'Culloch* v. *State of Maryland* (4 Wheat.

316, 406): '' The government of the United States, then, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, ' anything in the constitution or laws of any State to the contrary notwithstanding '.''

Where a matter is entrusted to the Congress, it is competent for the State to adopt legislation in co-operation with the United States as was done in the case of *Gilbert* v. *Minnesota* (254 U. S. 325). But when the Congress legislates as to a matter within the scope of congressional legislation, the State laws fall, and a recent example of that is to be found in the case of *Troppy* v. *La Sara Farmers Gin Co.* (113 F. 2d 350).

Accordingly, I decide in this case that by the terms of the Emergency Price Control Act of the United States, I am forbidden to consider the validity of the regulation here involved and, accordingly, I find the defendant guilty.