**REICHEL–KORFMANN CO. v. PORTER.**

No. 295.

United States Emergency Court of Appeals.

Heard at Chicago March 28, 1946.

Decided May 23, 1946.

Joseph H. Wendel, of Milwaukee, Wis., for complainant.

Betty L. Brown, of Washington, D. C., Attorney (Richard H. Field, General Counsel, Jacob D. Hyman, Associate General Counsel, and John O. Honnold, Jr., Chief, Court Review Price Branch, all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant protested Revised Maximum Price Regulation No. 279 (8 FR 11586) issued August 19, 1943, as amended by Amendment No. 3 dated September 2, 1944 (9 FR 10922), insisting that the regulation as amended does not effectuate the purposes of the Price Control Act and is, therefore, beyond the scope of the Administrator's statutory authority. The report of a board of review was approved, the protest denied; whereupon complainant came to this court.

The regulation establishes specific dollar and cent maximum prices for sales of hops at various distributive levels. It recognizes three classes of vendors,—growers, hop dealers and brewers supply dealers. Growers produce hops; hop dealers purchase from growers for resale to brewers and brewers supply dealers; brewers supply dealers, a relatively small sector of the industry, supply brewers with equipment, commodities, services and supplies. The regulation, as amended, limits the term "brewers supply dealers" to those whose annual sales of hops to brewers do not exceed 30% of their total annual sales of all commodities and services to such purchasers. Under the regulation a hop dealer or a brewers supply dealer is permitted to sell to brewers at a mark-up of 9¢ per pound over the price paid the grower. The brewers supply dealer customarily and historically renders special trade accommodations and services, emergency supplies and other similar service, especially to small brewers. The latter rely upon brewers supply dealers for advice and selection of desirable quality and character of hops to fit their equipment. Because of these

special services, which are not rendered by the hop dealer, the brewers supply dealer is permitted an additional 5¢ per pound on sales to brewers of hops purchased from hop dealers. Generally brewers supply dealers handle only about 2% of the total volume of hops sold.

On hops purchased from the grower, the brewers supply dealer is permitted no mark-up beyond the 9¢ per pound which is allowed also to hop dealers. It is undisputed that brewers supply dealers have historically, for some 25 years, normally and customarily purchased hops from both growers and dealers for resale to brewers, in varied proportions. Sometimes those purchased from dealers have predominated and sometimes those purchased from growers; usually, however, the greater part of the buying from growers has been left to hop dealers. Brewers supply dealers other than complainant have purchased direct from growers, but, apparently, complainant had not prior to 1944 purchased from them. However, in 1944 it was able to procure from growers approximately 69,000 pounds of hops for sale during the years 1944 and 1945. This, coupled with its normal purchases from hop dealers, when sold, aggregated slightly more than 30% of its total business with brewers and brought it in conflict with the amended regulation in that it could no longer be classed as a brewers supply dealer, inasmuch as the regulation defines such a party as one whose annual sales of hops to brewers does not exceed 30% of his total annual sales of all commodities to brewers. In other words, by exceeding the quota of 30% by its purchase from growers, complainant is disqualified from classification as a brewers supply dealer and may not have the usual mark-up of 5¢ per pound on its normal supply of hops purchased from hop dealers, but is limited to the mark-up of 9¢ per pound on the hops purchased from growers and allowed no mark-up whatever on those purchased from hop dealers. In consequence, complainant will lose its status as a brewers supply dealer with the resulting loss of a special mark-up of 5¢ per pound on its historically normal purchases from hop dealers. Complainant argues that inasmuch as no increase in price to the ultimate consumer occurs and inasmuch as the regulation, therefore, effectuates no purpose in price control, it is not in accord with law and is, therefore, void.

The declared purpose of the Price Control Act, 50 U.S.C.A.Appendix, §§ 901 to 946, is to stabilize and prevent speculative, unwarranted and abnormal increases in prices. To assure that the desired end be achieved, the Administrator is, by Section 2(a), authorized to establish by regulation or order "such * * * maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act." In other sections he is granted authority to promulgate such regulations as are necessary to prevent evasion or circumvention of maximum prices. But his functions are confined to such acts as are necessary to prevent increases in prices and to stay inflation resulting from abnormal rises in price structure. Obviously he may not exercise authority beyond that granted him by Congress or put in force regulations unnecessary for the effectuation of the purposes of the Act. The legality of his actions must be tested by whether they are reasonably connected with his combat against the inflationary pressure of rising prices. In other words, in determining the validity of a price regulation, we must be guided by consideration of its reasonable necessity to the establishment of effective price control. To these principles and these limitations we have previously given heed in such cases as Flett v. Bowles, Em.App., 142 F.2d 559; Consolidated Water Power & Paper Co. v. Bowles, Em.App., 146 F.2d 492; Montgomery Ward & Co. v. Bowles, Em.App., 147 F.2d 858. See also People v. D'Esposito, 181 Misc. 773, 45 N.Y.S.2d 865; United States v. Johnson, D. C., 53 F.Supp. 167.

We think, after mature consideration of this record, that the regulation, in so far as complainant and others similarly situated are concerned, does not contribute in any manner to effectuation of the purposes of the legislation. The regulation fixes the price of hops at all stages. The classification of complainant as a hop dealer or as a brewers supply dealer is not of material significance in the price structure, for it

affects in no wise the maximum prices fixed by the Administrator. The brewer who buys from the hop dealer and the brewers supply dealer pays exactly the same price for goods purchased by either from the grower, namely, the price paid the grower plus a mark-up of 9¢ per pound. The effect of the regulation is that if the brewers supply dealer's hop sales do not exceed 30% of his total business, then, as to the relatively small amount he normally purchases from the hop dealer, the brewers supply dealer, who, historically and traditionally, has added a 5¢ mark-up, may continue this traditional differential, but may not do so if his hop sales exceed 30% of his total sales. In either instance the cost to the consumer remains the same. The Administrator recognized the propriety of the existing price structure when he prescribed for both hop dealer and brewers supply dealer a mark-up of 9¢ per pound for hops purchased from the grower. He recognized that the brewers supply dealer, when he purchases his supply from the hop dealer, renders a special service for which he has been in the past and should be compensated, by a mark-up of 5¢ a pound over that price. Consequently the 5¢ mark-up for the brewers supply dealer over and above his cost of hops bought from the hop dealer is an admitted justifiable mark-up.

The amended regulation is so framed that if brewers supply dealers' increased sales come from hops purchased from the lower priced source, the growers, where there is only a 9¢ per pound mark-up, and, if this, plus their historical normal purchases from hop dealers, brings the total to more than 30% of their total sales, they are deprived of the historical mark-up on their normal purchases of hops from hop dealers. Such facts have nothing to do with what the ultimate consumer has to pay. Inasmuch as the brewers supply dealer's maximum price on hops purchased from the grower is precisely the same as the hop dealer's ceiling price on hops he buys from growers and the maximum price to the consumer is the same in either case, we think it obvious that the regulation in no wise achieves price control, affects price stabilization, prevents abnormal increases in prices or otherwise promotes the congressional purpose.

The argument of respondent that it is non-economic to permit brewers supply dealers to purchase from growers without limitation, resolves itself merely in the postulate that he desires to cut off brewers supply dealers as competitors of hop dealers in purchasing from growers. That this apparently was the Administrator's purpose is clear from his statement of economic data where he asserts that it was necessary for him so to shape and design the limitations upon the availability of the brewers supply dealer's mark-up as to compel that type of distributor to maintain his customary and usual type of business. But to attempt to control such competition, as we see it, in no wise promotes the purposes of the Act, inasmuch as it does not affect the price structure and tends in no way to combat inflationary pressure. We think that no public interest pertinent to price control is involved in the question of whether complainant enters the field of purchasing from growers and that whether hops are purchased by hop dealers or by brewers supply dealers is of no concern to the Administrator in his official control of prices, for no price-saving for the consumer and no abnormality in costs are involved.

Apparently it would be more helpful to the promotion of the purpose of the legislation to encourage the brewers supply dealers to increase their purchases from growers and lessen those from hop dealers, for from such purchases there is only a mark-up of 9¢; sales of hops purchased from hop dealers at the higher mark-up of an additional 5¢ would, automatically, be reduced.

In view of our conclusion, we do not deem it necessary to give consideration to complainant's other contentions.

We conclude that the regulation as amended is not in accord with the law because it does not effectuate the purposes of the legislation and that, as to supply dealers such as complainant, it should be set aside.

Judgment will enter accordingly, setting aside Revised Maximum Price Regulation No. 279, as amended, insofar as it applies to brewers supply dealers.