### HILSINGER et al. v. UNITED STATES (two cases).

(Circuit Court of Appeals, Sixth Circuit. June 10, 1924. Rehearing Denied July 30, 1924.)

Nos. 3937, 3938.

**1. Intoxicating liquors ⊗⇒249—Searches and seizures ⊗⇒7—Seizure of samples of beer from brewery truck by prohibition agents without warrant held lawful.**

Prohibition agents, who, after delivery of beer at saloons from a certain brewery, purchased in such saloons beer containing more than the lawful percentage of alcohol, stopped a truck loaded with beer from the same brewery on the street in the daytime, without a warrant, and took therefrom four kegs of beer. *Held*, that such seizure was not unreasonable and was lawful.

**2. Intoxicating liquors ⊗⇒249 — Prohibition agents may search licensed brewery without warrant.**

Under the authority conferred by National Prohibition Act, tit. 2, § 28 (Comp. St. Ann. Supp. 1923, § 10138½o) and Rev. St. § 3177 (Comp. St. § 5900), prohibition agents may inspect in the daytime a brewery engaged in the manufacture of a taxable product, and if their inspection discloses a product made in violation of the National Prohibition Act they may take samples of the same without a warrant, to be preserved as evidence.

**3. Intoxicating liquors ⊗⇒236(9) — Evidence held not to support conviction for maintaining nuisance.**

Evidence *held* insufficient to sustain conviction of the president of a brewery company,

whose brewery was being operated by a receiver, and a salesman for the product, as parties to the maintenance of a nuisance by the receiver.

. In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

.Criminal prosecutions by the United States against Michael Hilsinger, Michael Keck, and Joseph Hermann. Judgment of conviction, and defendants bring error. Affirmed in ·part, and reversed in part and remanded.

For opinion below, see 284 F. 585.

Certiorari denied 45 S. Ct. 100.

Edward J. Dempsey and Allen C. Roudebush, both of Cincinnati, Ohio (Edw. M. Hurley and Frederick Closs, both of Cincinnati, Ohio, on the brief), for plaintiffs in error.

Thos. H. Morrow and R. T. Dickerson, Sp. Asst. Attys. Gen. (Benson W. Hough, U. S. Atty., of Columbus, Ohio, on the brief), for the United States.

Before DENISON and DONAHUE, Circuit Judges, and SIMONS, District Judge.

DENISON, Circuit Judge. The operations of the Schaller Brewing Company, of Cincinnati, had passed into the hands of defendant Hilsinger, as receiver, appointed by the state court. Defendant Keck had been president of the company, and continued active connection with its affairs under the receiver. Defendant Hermann was a salesman and collector for the receiver. It appears without question that, under the receivership, the brewery was manufacturing and selling two grades of beer. One grade, spoken of as "near bear," had an alcoholic content of less than one-half of 1 per cent., and there is no complaint as to the manufacture or sale of this beer. The other grade was darker in color, and it was regularly sold for $18 per barrel, while the near beer was sold for $9.20 per barrel. It is the theory of the government that the higher priced grade was beer in which the alcoholic content had not been reduced to the maximum point allowed by law, but was allowed to continue to be about 3 per cent., and these prosecutions are based on the theory that the defendants were engaged in making and selling this 3 per cent. beer. The indictment in the District Court, Case 2206, was for conspiracy to make, possess, and sell; that in 2205 for maintaining the brewery as a nuisance.

Throughout the trial, this heavier and darker beer was commonly referred to as "good beer," in distinction from near beer. It is apparent that the judge and witnesses and counsel, by the phrase "good beer," meant beer which approximated the alcoholic standard of the conditions before the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.); and we see no error or prejudice resulting from the use of this nomenclature.

Having in some way come to suspect that this brewery was putting out this good beer, the prohibition agents, over a period of three or four days, observed the Schaller truck delivering barrels of beer to saloons, and on applying shortly to these same saloons and asking for good beer, were served with beer which they took away with them and found to contain about 3 per cent. of alcohol. Having this measure of confirmation of their suspicions, they followed a truck load of kegs from the brewery to the point where it stopped for the first delivery. They then accosted the driver, and after some conversation took possession of four kegs out of the much larger load. Each of these kegs was found to contain about the same grade of 3 per cent. beer. Thereupon they went to the brewery and proposed to make a search, to which no objection was made. In connection with this search, their special attention was attracted to relatively small quantities of beer in two different places; they took samples, and prevented those in charge from continuing the destruction of these two lots. These samples turned out to be the same 3 per cent. quality. It is claimed that all other evidence of the alcoholic content of this higher priced grade of beer was inadmissible for various reasons, except the six samples taken from the four kegs on the truck and the two places in the brewery. For the purposes of this opinion we assume that such claim is correct, and ·thus come directly to these six samples. As to them, it was insisted that they were the result of unreasonable search and seizure. Upon this theory, the motion for their return to the defendants was fully considered by the court upon proofs taken, and was denied. Exceptions were saved to this denial and to the receipt of the samples in evidence.

[1] First, as to the four kegs taken from the truck: It is true that the prohibition agents had no search warrant; but this only brings us to the question whether the search and seizure were inherently unreasonable. In reaching a conclusion on that question, we place no dependence upon the fact that the event justified the suspicions. How much force that result should be given need not be

considered. The agents had learned that beer of this forbidden grade had been sold in several saloons. In three or four instances they had been able to purchase it immediately after the receipt by that saloon of beer from this brewery. With this basis of belief that this brewery was sending out this beer, we find nothing unreasonable in the conduct of the agents in stopping the truck load, during business hours and upon a busy street, for the purpose of confirming their suspicions. Obviously the standard of reasonableness in search is not the same as to a brewery truck loaded with kegs for distribution to drinking places, driving upon a city street and in the near or immediate presence of police protection, as to a passenger automobile, upon a country highway, and not apparently carrying any beverage, though we intend no intimation as to the standard of reasonableness in the latter case. It is to be noted that the agents did not permanently seize the entire load of kegs, but only took the four which the driver of the truck pointed out to them as containing the kind of beer they were after.

[2] Second, as to the brewery samples: Regardless of other considerations, the right of the prohibition agents to make search in the brewery may well rest, as the trial judge put it, upon the fact that they are agents and assistants in the Department of Internal Revenue, representing the Commission of Internal Revenue, under sections 28 and 38 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, §§ 10138½o, 10183½y), and therefore entitled, under R. S. § 3177 (Comp. St. § 5900), to inspect and examine a brewery in the daytime. The only answer which is suggested by defendants to this view is that, though assistants were authorized to make search, they were not authorized to make seizure, which right is confined to collectors of internal revenue, by R. S. § 3453 (Comp. St. § 6355). We do not think this material. If a lawful search, made by prohibition agents, discloses the existence, upon the premises which they are rightfully examining, of property which has come into existence through violation of law, so that the possessor has, under the express terms of the law, no property right in it, we can see nothing unreasonable, under any proper construction of the Fourth Amendment, in seizing that same property. This is particularly true where the only seizure consisted in taking a sample to be preserved as evidence, and preventing the destruction of the remainder.

[3] We have examined the various other objections urged as to the admission of evidence and the charge of the court, and we find no prejudicial error, with one exception. Defendant Hermann was merely a salesman and collector. There was nothing to indicate that he had any share in the management of the brewery. Neither did Keck. While it may be assumed that his influence with the receiver would have been large, yet he had no measure of control. Though the evidence is ample to indicate that all three were participants in the plan or conspiracy to sell this good beer, we think it not sufficient to justify the conclusion that Keck or Hermann was engaged in maintaining a nuisance upon the brewery premises. Such a conclusion might not be improper on the theory that Hilsinger maintained the nuisance, and Keck and Hermann aided him therein, and so became principals; but this theory was not suggested below nor in this court.

The judgment in District Court No. 2206, the conspiracy case, is affirmed as to all parties; in 2205, the nuisance case, it is affirmed as to Hilsinger, but reversed as to Keck and Hermann, and, as to them, the case is remanded for a new trial.