## TROPPY v. LA SARA FARMERS GIN CO., Inc., et al.

### No. 9411.

Circuit Court of Appeals, Fifth Circuit.

July 2, 1940.

H. L. Hall, of Edinburg, Tex., for appellant.

Sid L. Hardin, of Edinburg, Tex., John S. L. Yost and W. Carroll Hunter, Sp. Assts. to the Atty. Gen., Douglas W. McGregor, U. S. Atty., of Houston, Tex., and Jas. L. Abney, Asst. U. S. Atty., of Brownsville, Tex., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

The appellant challenges the constitutional validity of the cotton-marketing quota provisions of the Agricultural Adjustment Act of 1938.[1] The judgment appealed from denied his right to recover from appellees amounts withheld under the act as penalties on sales of cotton in excess of marketing quotas established under the act for the marketing year 1938–1939. The United States was permitted to intervene as a defendant.[2] To avoid repetition, reference is made to the complete statement of facts in the able opinion of the district court in this case.[3]

This cotton was produced on farms in Texas, and sold in Texas to appellees. They resold it to cotton merchants who, after compression, shipped it to an important concentration point in Texas, where large quantities of cotton were received from many states for reshipment almost entirely to foreign nations. Cotton concentrated at this point usually loses its identity as the product of any particular state or producer. Of the very small quantity reshipped to domestic points, a major portion goes to non-cotton-producing states. It is very probable that the final destination of this cotton was a foreign country, but it cannot be definitely traced beyond the State of Texas.

In 1937, Texas consumed slightly less than 2% of its production of 4,952,000 bales, Mississippi, slightly more than 2% of its 2,562,000, California, 3½% of its 723,000, and Arkansas, a negligible quantity of its 1,809,000 bales. The consumption, if any, in the producing states of Arizona, Florida, Louisiana, Missouri, New Mexico, and Oklahoma was too negligible to report. On the other hand, Georgia, North Carolina, South Carolina, and Virginia consumed more than they produced, but, in each of these states, substantial quantities of cotton produced therein were shipped to points outside of the state, and each also received substantial quantities produced in other states. It is estimated that a bale of cotton produced in the United States travels from farm to mill, on an average, a distance of 4,000 miles.

Although the penalties in this case were imposed upon intrastate sales, the question is whether or not they were sales in the stream, or affecting the stream, of interstate or foreign commerce, and as such were valid under the commerce clause of the federal constitution, art. 1, § 8, cl. 3. The district court answered this question in the affirmative, and we concur in its findings and conclusions. Our task is made easy by the recent decision of the Supreme Court in Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092, sustaining the tobacco-marketing quota provisions of the same act against the challenge that such provisions constituted a regulation of the production of tobacco. The court held that the act did not purport to control production, and imposed no penalty upon the production of tobacco in excess of the marketing quota; that the statute operated, not on production, but prospectively on marketing. It further held· that the motive of Congress in exerting the power was irrelevant to the validity of the legislation. There is no difference between the poundage quota for cotton and that for tobacco. The Mulford decision is controlling here.

In United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, the Government relied upon the power to tax and to spend under the general welfare clause of the constitution. The commerce clause (the source of the power assailed in the instant case) was not involved. The tenth amendment is not applicable to federal regulation within the scope of the commerce power, because, in case of conflict, this power granted to the

---

[1] 52 Stat. 31, as amended, 7 U.S.C.A. § 1281, et seq.

[2] Act of Aug. 24, 1937, c. 754, Sec. 1, 50 Stat. 751, 28 U.S.C.A. § 401.

[3] Troppy v. LaSara Farmers Gin Company, et al., D.C., 28 F.Supp. 830.

federal government dominates the power reserved to the states. [4] Unlike the taxing power, it is not limited by any state power implied from the necessity of maintaining our dual form of government.[5] The validity of an exercise of the commerce power is to be determined by what is regulated, not by what the regulation affects. If intrastate commerce injuriously affects interstate commerce, both may be regulated so as to remove every obstruction to the free flow of interstate commerce.

At least 75% of all cotton produced in the United States in 1937 moved in interstate and foreign commerce, approximately 50% of which was shipped to foreign spinners. Almost all of that produced in the State of Texas entered such channels. In the great movement of cotton from farm to mill, it is impossible to distinguish between state, interstate, and foreign transactions. In this case, the probable foreign movement took place after resale by the first buyer from the producer. In many instances, cotton will return to the state of production for consumption therein after having been shipped out of the state. At the time the producer sells cotton, it is not always possible to know its destination, and regulation of interstate shipments could be easily evaded unless intrastate shipments were also regulated. To be effective, regulation must apply to all sales. Therefore, it may constitutionally so apply. [6]

The judgment appealed from is affirmed.

---

[4] Minnesota Rate Cases, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A., N.S., 1151, Ann.Cas.1916A, 18; Shreveport Case, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Board of Trustees of the University of Illinois v. United States, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 520.

[5] Board of Trustees of the University of Illinois v. United States, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 520.

[6] Mulford v. Smith, 307 U.S. 38, 47, 59 S.Ct. 648, 83 L.Ed. 1092.