## UNITED STATES v. BIEHUNKO.
### Civil Action No. 60.

District Court, S. D. Texas,
Victoria Division.
June 3, 1944.

Brian S. Odem, United States Attorney, and J. K. Smith, Assistant United States Attorney, both of Houston Tex., and Benjamin S. Catchings, Senior Attorney, Department of Agriculture, of Washington, D. C., for plaintiff.

No appearance for defendant.

KENNERLY, District Judge.

This is a suit by the Government against the defendant, a cotton farmer and producer, residing in Lavaca County, in this District and Division, under the Agricultural Adjustment Act of 1938, Sections 1281 to 1393, Title 7 U.S.C.A., to recover the penalty fixed by the Act for excessive production of cotton, and for injunction under Section 1376.

Though duly served with citation, defendant has not served nor filed an answer or other pleading, nor has he appeared. The Government has moved for a judgment by default under Rule 55(b) (2), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, but a trial was had, at which the Government offered evidence in support of its claim.

The facts are substantially these:

■ (a) The evidence shows the making of Allotments to, and the fixing of quotas of, cotton farmers in Lavaca County, as required by the Act.

(b) Defendant's allotment for 1940–41 marketing year was 23.4 acres of cotton, and his marketing quota was 3604 pounds of cotton. During such year, however, he planted 41.9 acres of cotton, and produced and marketed 4608 pounds of cotton, or 1004 pounds in excess of his quota.

(c) Defendant's allotment for 1942–43 marketing year was 24 acres of cotton, and his final marketing quota was 4094 pounds of cotton. During such year, however, defendant planted 36.1 acres of cotton, and produced and marketed 6150 pounds of cotton, or according to the Government's claim, 2047 pounds in excess of his quota.

(d) The Government has heretofore recovered from defendant a judgment in this Court in Civil Action No. 26 for $80.79, being the penalty it was claimed he incurred for marketing cotton in excess of his quota during the marketing year 1938–39. This judgment has not been paid.

(e) There is sufficient evidence to support a finding, and I find, that a large part of the cotton produced in Texas during the marketing years 1940–41 and 1942–43, including the cotton raised by defendant, moved in interstate commerce.

■ 1. No questions have been raised with respect to the constitutional validity of the Act. This may be regarded as settled. See Mulford v. Smith, 307 U.S. 38, 47, 59 S.Ct. 648, 83 L.Ed. 1092; Troppy v. La Sara Farmers Gin Company, Inc., 5 Cir., 113 F.2d 350; Hawthorne v. United States, 5 Cir., 115 F.2d 805. The only question is as to the injunction prayed for by the Government.

■ 2. Claiming that defendant has violated the provisions of the Act and Regulations promulgated thereunder, and has maintained a hostile attitude towards the cotton marketing program, while enjoying the benefits therefrom, etc., the Government prays for injunctive relief.[1] An examination of the Act discloses that unlike some other similar Acts, it contains no specific provision for the issuance of an injunction. The wording is that the several District Courts are vested with jurisdiction specifically to enforce the provisions of the

---

[1] Paragraph 7 of the Government's Complaint is as follows:

"Defendant consistently has violated the provisions of the Act and regulations as to marketing of cotton. On November 24, 1941, in this Court, in Civil Action No. 26, plaintiff obtained a judgment against defendant for $80.79 on account of cotton marketing penalties accrued during the 1938–1939 marketing year, no part of which has been paid. Defendant has maintained a hostile attitude toward the cotton marketing program while enjoying the same benefits therefrom as other producers during the years mentioned herein. His continued refusal to comply with the act and marketing quota regulations, and his avoidance of the payment of the said judgment against him and subsequent penalties, is having an adverse effect upon the administration of the program in his locality. Plaintiff has been unable to find property of the defendant against which the judgment already obtained can be levied, and the mere entry of further money judgments would be futile. The usual method of inducing compliance with the act and regulations having failed, plaintiff now is applying to this Court for injunctive relief."

Act, i.e., that in enforcing the Act, such Courts may exercise their jurisdiction both at law and in equity.[2] But it is clear that such Courts, in any proceeding in Equity to enforce the Act, have only the plain and time honored jurisdiction of a Court of Equity. Hecht Company v. Bowles, Administrator, 321 U.S. 321, 64 S.Ct. 587. And that no matter how hostile defendant may have been or may be to the enforcement of the Act, the Government, to obtain injunctive relief against him, must point to and prove some unlawful or inequitable act threatened by defendant, which Courts of Equity will, under the settled equity practice, enjoin.

3. One of these claimed by the Government is set forth by it in its prayer in its complaint, as follows:

"Wherefore, plaintiff demands:

"(1) That the Court issue a permanent injunction commanding defendant: (a) fully to comply with the provisions of Section 373(b) of the act and report or ascertain and report to the treasurer of the Agricultural Conservation Committee for Lavaca County, Texas, the names and addresses of the buyers of each and every bale of cotton produced on his said farm and marketed therefrom during the marketing years 1940-1941, and 1942-1943, not heretofore reported, with the date of each sale and the quantities sold using form number 'Cotton-417'."

■ It is undoubtedly true that in enforcing in a Court of Equity the provisions of the Act, the Court has power, upon application of the Government, to require the farmer to make the reports which the Act provides that he shall make, but the Government's application must show good grounds and reasons for requiring him to do so. It is not sufficient for the Government to simply allege a hostile attitude by the farmer to the marketing program, etc. Nor will it do for the Government to give no reasons. Here it appears that the Government's reasons in the main are to have defendant to fill out "Form Number Cotton-417," giving the Government information.

But it will be observed that the application is not for preliminary injunction, having for its object the obtaining from defendant of information in order to fix his liability for penalties herein, etc. The application is for permanent injunction, effective after judgment, and since the Government has already alleged and proved the quantity of excess cotton produced and marketed by defendant, it is not clear what, if any, benefit would accrue to the Government if defendant made the report demanded.

■ However that may be, if the Government desired or now desires an Injunction only in order to obtain information to ascertain or fix the liability of defendant, or if it desired or now desires an injunction only in order to obtain information to ascertain or fix the liability of some other person and can use the process of this Court in this case in obtaining same, it is clear that it had and has several complete and adequate remedies at law, one of these being the taking of defendant's depositions under the Rules.

■ Equity will only aid where there is no complete and adequate remedy at law.

4. The Government also prays injunction against defendant:

"Further commanding the defendant to pay to the plaintiff the penalties accrued on the excess cotton marketed by him, amounting to $30.12 in the 1940-1941 marketing year, and $163.76 in the 1942-1943 marketing year, with interest thereon from the dates of his various sales of such excess cotton."

■ There is nothing in the Act to indicate that the Congress intended that the penalties for which the farmer becomes liable under Section 1348 are to be treated other than as a debt, or that they are to be collected in any way other than in an ordinary action at law for debt. It has long been the law that a Court of Equity will

---

[2] Section 1376 of Title 7 U.S.C.A., is as follows:

"Sec. 1376. Court jurisdiction; duties of district attorneys; remedies and penalties as additional

"The several district courts of the United States are hereby vested with jurisdiction specifically to enforce the provisions of this subchapter. If and when the Secretary shall so request, it shall be the duty of the several district attorneys in their respective districts, under the direction of the Attorney General, to institute proceedings to collect the penalties provided in this subchapter. The remedies and penalties provided for herein shall be in addition to, and not exclusive of, any of the remedies or penalties under existing law."

generally not enforce the payment of an ordinary debt by injunction.

It follows that the Government is entitled to judgment for penalties sued for, but not entitled to injunction. Let a decree be prepared and presented accordingly.