**UNITED STATES of America**
v.
**Lindsay B. SHAFER, Lewis Shafer, Joseph Shafer, and Lewis Shafer, Sr.**
**Civ. No. 8218.**

United States District Court
D. Maryland, Civil Division.
June 17, 1955.

George Cochran Doub, U. S. Atty., and James H. Langrall, Asst. U. S. Atty., Baltimore, Md., and Howard Rooney and Joseph B. Zimowski, Attys. for U. S. Dept. of Agriculture, Washington, D. C., for plaintiff.

Wilson K. Barnes, Baltimore, Md., and Stanford Hoff and John Wood, Jr., Westminster, Md., for defendants.

THOMSEN, Chief Judge.

Once again embattled farmers of Carroll County, Maryland, seek to prevent representatives of the United States Department of Agriculture from entering on their farms to measure the acreage of wheat. Their previous effort was successful, United States v. Morelock, D.C.D.Md., 124 F.Supp. 932, because the regulations then in force did not specifically provide for such entry, the representatives of the department had failed to follow its prescribed procedures, and, on balance, the equities were against the granting of the requested injunction.

Now, however, the regulations have been rewritten, specifically providing for entry on farms in aid of measurement; defendants have threatened to shoot the duly designated reporter and the other representatives of the department who accompanied him on his visit to defendants' farms, if they enter thereon to measure the acreage of wheat; and the government seeks an injunction restraining such interference. The present action is brought prior to harvest, when the evidence of wheat acreage is most easily obtainable, and before any penalties for the 1955–56 marketing year have accrued. Defendants' answer raises twenty separate defenses, some with subdivisions, and defendants have objected to much of the government's evidence and most of the exhibits.

Other facts will be stated in the discussion of the various points.

The relevant portions of the Agricultural Adjustment Act of 1938, 52 Stat. 31, as amended, 7 U.S.C.A. § 1281 et seq., are set out in Note 1 to the Morelock opinion, 124 F.Supp. at page 935. Intervening amendments to the Act are relatively unimportant.[1] Particular sec-

---

1. 68 Stat. 903, 7 U.S.C.A. §§ 1332, 1334, 1335; 68 Stat. 904, 7 U.S.C.A. § 1374 (c); 68 Stat. 905, 7 U.S.C.A. §§ 1330, 1334a.

tions will be referred to in the discussion of the various points.

The controlling regulations, issued pursuant to 7 U.S.C.A. § 1375, have been rewritten. The new regulations were published in the Federal Register, March 18, 1955, 20 F.R. 1621. See also 19 F.R. 2374; 19 F.R. 3211; 19 F.R. 3249; 19 F.R. 3863; 19 F.R. 3899; 19 F.R. 4058; 19 F.R. 5625; 19 F.R. 6775. The pertinent parts of the section dealing with the measurement of farms are set out in the note below.[2] This comprehensive

2. Reg. sec. 728.555, 20 F.R., at 1624:

"§ 728.555 *Measurement of farms.* The county committee shall provide for the measurement of all farms in the county having a 1955 wheat acreage allotment and any other farms in the county on which the committee has reason to believe there is wheat which could be available for harvest in 1955, regardless of its intended use, for the purposes of ascertaining with respect to each of such farms the acreage of wheat and whether such acreage is in excess of the farm wheat acreage allotment for 1955. * * * Measurement shall be made under the general supervision of the county committee in accordance with the following provisions:

"(a) *Reporter.* The measurement on the farm shall be made by an employee of the county committee who has been designated as a reporter and determined to be qualified to carry out the duties of a reporter by the county office manager. A reporter may be assisted in measurement of a farm by another reporter, community, county or State committeeman, State committee representative, any employee of the county ASC office when authorized by the county office manager, or by any employee of the Department when authorized by the Deputy Administrator for Production Adjustment, Commodity Stabilization Service. The reporter may request the operator or producer, or his representative, to designate all fields on the farm being utilized for growing wheat and otherwise to assist in measuring the farm. If requested, the operator or producer, or his representative, shall so designate all fields being utilized for growing wheat and may otherwise assist in measuring the farm. The reporter may utilize any such assistance from the operator or producer, or his representative.

\* \* \* \* \* \*

"(c) *Farm visit.* A reporter shall visit each farm assigned to him for measurement and enter thereon if such entry will facilitate measurement. Upon request he will exhibit to the farm operator, producer, or owner, his assignment to measure the farm.

"(d) *Methods of measurement.* Measurement may be made by identification of fields or parts of fields by use of a map, aerial photograph, or by means of a steel or metallic tape or chain, or rod and chain, or by use of a measuring wheel when authorized by the Deputy Administrator for Production Adjustment, Commodity Stabilization Service, or by a combination of one or more of the foregoing methods. Measurement shall also be deemed to include an estimate when made in compliance with the provisions of paragraph (e) (1) of this section. The measurement will be entered by the reporter on the Form CSS–578 and filed in the county ASC office from the data so obtained and the use of a planimeter or rotometer in connection therewith is authorized.

"(e) *Measurement of wheat acreage.* ·(1) Upon his first visit to the farm for purposes of measurement the reporter assigned thereto shall (i) estimate the acreage planted to wheat including volunteer wheat and wheat mixtures in wheat-mixture counties where the total acreage of wheat is obviously less than 15 acres and all producers of wheat on the farm or their authorized representative certify in writing that they will not apply for price support on 1955 wheat produced on the farm and will not apply for payment under any 1955 program formulated under sections 7 to 17, inclusive, of the Soil Conservation and Domestic Allotment Act, as amended (16 U.S.C. 590g–590q), on any farm in which they or any of them have an interest; and (ii) in all other cases measure all acreage on which wheat is growing except fields or parts of fields which are identified by the operator or producer as being fields of wheat mixtures in wheat-mixture exemption counties, acreages to be used as cover crop, and volunteer wheat. The acreages of such wheat mixtures, cover crop, and volunteer wheat may be measured, and if not measured shall be estimated.

"(2) All farms required to be measured under the provisions of subparagraph (1) (i) of this paragraph which from such measurement (including estimates, if any), are found to have acreage on which wheat is growing in excess of the 1955 farm wheat acreage allotment shall be revisited by the reporter for the pur-

section has replaced both old Reg. sec. 728.455 and the old instructions, set out in Notes 2 and 3 respectively to the Morelock opinion, 124 F.Supp. at pages 937–940. The new regulations include the following provisions:

"§ 728.555 *Measurement of farms.* The county committee shall provide for the measurement of all farms in the county having a 1955 wheat acreage allotment and any other farms in the county on which the committee has reason to believe there is wheat which could be available for harvest in 1955, regardless of its intended use, for the purposes of ascertaining with respect to each of such farms the acreage of wheat and whether such acreage is in excess of the farm wheat acreage allotment for 1955.

\* \* \* \* \*

"(c) *Farm visit.* A reporter shall visit each farm assigned to him for measurement and enter thereon if such entry will facilitate measurement. \* \* \* "

It thus appears that the new regulations specifically authorize entry on a farm if such entry will facilitate measurement. In the case at bar, the reporter testified that he could not see what was growing in some of the fields on defendants' two farms without entering thereon, and that with respect to certain other fields he could see from the road what was growing alongside the road, but could not see the whole field. I find these facts, and further find as a fact that entry on the farms in question will facilitate measurement.

■ Defendants argue that the Act does not contemplate entry on a farm without consent of the owner, and cite a debate in the Senate at the time the Act was under consideration. 83 Cong. Rec. 1858. The statements by the various Senators show that they understood that the Act contemplated entry on farms, but the question of consent of the owner was not discussed. If the Senators had intended to require consent of the owners before entry can be made, such a provision could easily have been inserted in the Act.

Defendants then argue that if the Act and the Regulations authorize entry without consent of the owners, they violate the Fourth, Fifth and Tenth Amendments to the Constitution.

■ ■ The argument based on the Fourth Amendment is without merit. The protection accorded by the Fourth Amendment does not extend to the open fields. Hester v. U. S., 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898.

■ The constitutionality of the Act was sustained in Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122, against the contention that it violates the Fifth Amendment. See also Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092, and Troppy v. La Sara Farmers Gin Co., 5 Cir., 113 F.2d 350.

The right to measure asserted by the government in this case is in aid of and ancillary to the right to regulate the marketing of wheat, which was sustained in Wickard v. Filburn, supra, and is necessary and proper for carrying into execution the purposes of the Act and the power of Congress under the Commerce Clause. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; U. S. v. Hilsinger, D.C., 284 F. 585, Id., 6 Cir.,

poses of a second measurement after the period for adjusting excess acreage prior to harvest has expired. On this visit all acreage devoted to wheat and which has not been adjusted prior to harvest so as not to qualify, as wheat acreage in accordance with the regulations in this subpart or which does not qualify as a wheat mixture in wheat-mixture exemption counties shall be measured. In making such measurements, measurement data acquired on the first visit may be utilized.

"(f) *Prior measurements.* Measurements made prior to the effective date of this section, and in accordance with procedures then in effect may be utilized where pertinent for the purpose of ascertaining with respect to any farm the 1955 wheat acreage and the wheat acreage in excess of the 1955 farm wheat acreage allotment."

2 F.2d 241, certiorari denied 266 U.S. 622, 45 S.Ct. 100, 69 L.Ed. 473; Taylor v. Fine, D.C.S.D.Cal., 115 F.Supp. 68.

Defendants attempt to distinguish the cases cited on the ground that those cases dealt with activities which have been regulated under the police power from time immemorial, whereas "growing wheat on a farm has been a lawful, unregulated business from the time of Joseph in Egypt up until the time of this case". The illustration is unfortunate, for Joseph won fame by regulating the consumption and marketing of grain. Genesis 41. Although the present regulation is under the commerce power of the federal government, Wickard v. Filburn, supra, rather than under the police power, it has long been recognized that "where a certain field of activity becomes subject to one of the enumerated federal powers, then the federal government may in that field exercise authority comparable to state police power." Doherty v. U. S., 8 Cir., 94 F. 2d 495, 497, certiorari denied 303 U.S. 658, 58 S.Ct. 763, 82 L.Ed. 1117. See also Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194.

The government in this case is not seeking an injunction requiring defendants to identify the fields or to take any other affirmative action in aid of the reporters. Cf. United States v. Morelock, 124 F.Supp. at page 942.

No violation of the Tenth Amendment is involved. Wickard v. Filburn, supra. The objection that the government has no property right in the farms is frivolous.

Defendants attack the new regulations, sec. 728.550–728.597, 20 F.R. 1621, and sec. 728.510–728.526, 19 F.R. 3249, because they were signed by True D. Morse, as Acting Secretary of Agriculture, rather than by the Secretary himself. 7 U.S.C.A. § 1375. They also attack for the same reason the proclamation of the result of the referendum, signed by Earl Butz, as Acting Secretary, 19 F.R. 5625, and a notice, 19 F.R. 2374, which was signed by J. N. McConnell, Administrator, Commodity Stabilization Service. Defendants contend that there has been an unlawful delegation of duties.

True D. Morse was Under Secretary, appointed by the President, with the advice and consent of the Senate, 5 U.S.C. A. § 514a, and was authorized to exercise the functions and perform the duties of the Secretary in case of his absence or sickness. 5 U.S.C.A. § 514b, 5 U.S.C.A. § 4. No question of subdelegation of authority is involved when papers are signed by the Under Secretary as Acting Secretary, which is the way he should sign when the Secretary is absent or sick. 19 Op.Atty.Gen. 133.

"In the course of administrative routine, the disposition of official matters by an Acting Secretary is frequently necessary, and the integrity of administration demands that credit be given to his action in that capacity." Morgan v. U. S., 298 U.S. 468, at page 479, 56 S.Ct. 906, at page 911, 80 L.Ed. 1288. "There is a presumption of authority for official action rather than want of authority, and where the statute prescribes conditions under which the subordinate may act as head of a bureau and the subordinate acts as such, the existence of those conditions will be presumed in the absence of a contrary showing." Anderson v. P. W. Madsen Investment Co., 10 Cir., 72 F.2d 768, at page 771. See also U. S. v. Signore, 7 Cir., 115 F.2d 669, 672; Ryan v. U. S., 136 U.S. 68, 81, 10 S.Ct. 913, 34 L.Ed. 447; U. S. v. Eighty Acres of Land, D.C.D.Ill., 26 F.Supp. 315, 319.

Moreover, publication of a document in the Federal Register raises a presumption of validity, and defendants offered no evidence to rebut that presumption with respect to any of the documents in issue. 44 U.S.C.A. § 307 provides:

" * * * The publication in the Federal Register of any document shall create a rebuttable presumption (a) that it was duly issued, prescribed, or promulgated; (b) that it was duly filed with the Division and made available for public inspection

at the day and hour stated in the printed notation; (c) that the copy contained in the Federal Register is a true copy of the original; and, (d) that all requirements of this chapter and the regulations prescribed hereunder relative to such document have been complied with. The contents of the Federal Register shall be judicially noticed and, without prejudice to any other mode of citation, may be cited by volume and page number."

Nor is any question of delegation involved in the case of the proclamation signed by Earl Butz as Acting Secretary, 5 U.S.C.A. § 517. Reorganization Plan No. 2 of 1953, 18 F.R. 3219, 67 Stat. 633, 5 U.S.C.A. § 133z–15 note. Executive Order 10481, 18 F.R. 4944, U.S.Code Congressional and Administrative News 1953, p. 1052, which was entered pursuant to 5 U.S.C.A. § 6, provides:

"In the case of the absence, sickness, resignation, or death of both the Secretary of Agriculture and the Under Secretary of Agriculture, the Assistant Secretaries of Agriculture, in the order of precedence as determined from time to time by the Secretary of Agriculture, shall perform the duties of the office of Secretary of Agriculture."

Earl Butz was one of the Assistant Secretaries so authorized to act. Defendants' objection to the sufficiency of the certification of the Secretary's memoranda designating the "Order in which Assistant Secretaries Shall Perform as Acting Secretary" is without merit. 28 U.S.C.A. § 1733.

Rule 44, Fed.Rules Civ.Proc. 28 U.S.C.A., which deals with proof of official records generally, and provides one method of proof in paragraph (a) of the rule, also provides in paragraph (c):

"This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by any applicable statute or by the rules of evidence at common law."

In 2 Barron & Holtzoff, Federal Practice and Procedure, it is stated, page 701: "A party desiring to introduce an official record in evidence has the option of proceeding under Rule 44 or under an applicable statute." See also Hagen v. Porter, 9 Cir., 156 F.2d 362, 365; Bowling v. United States, 8 Cir., 299 F. 438; Keyser v. Hitz, 133 U.S. 138, 145–146, 10 S.Ct. 290, 33 L.Ed. 531.

The giving of the notices by the Administrator did not involve any subdelegation. There is no requirement that notices be issued by the Secretary himself. The delegation to agency heads, 19 F.R. 74, authorized the Administrator to issue the notice. See also 5 U.S.C.A. § 22.

Even if the various papers did involve some subdelegation of rule-making power, they would not be invalid, in view of the provisions in Reorganization Plan No. 2 of 1953 that "there are hereby transferred to the Secretary of Agriculture all functions not now vested in him of all other officers, and of all agencies and employees of the Department of Agriculture" and that "the Secretary of Agriculture may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of Agriculture of any function of the Secretary, including any function transferred to the Secretary by the provisions of this reorganization plan." 18 F.R. 3219, 67 Stat. 633.

One of the purposes of the Reorganization Act of 1949, 5 U.S.C.A. § 133Z et seq., was "to promote the better execution of the laws, the more effective management of the executive branch of the Government and of its agencies and functions, and the expeditious administration of the public business". 5 U.S.C.A. § 133Z (a) (1). In carrying out the purposes of the Act a reorganization plan may provide for "the transfer of the whole or any part of any agency, or of the whole or any part of the functions thereof, to the jurisdiction and control

of any other agency" and "the authorization of any officer to delegate any of his functions". 5 U.S.C.A. § 133Z-1 (1, 5).

These provisions tacitly recognize that no single individual can actually perform even a small fraction of the important tasks in a large executive department. As an alternative to subdelegation by the head of the department, Congress can delegate directly by vesting authority in subordinate officers. This approach was disapproved by the Hoover Commission, and its recommendation was that no subordinate should have authority independent from that of his superior, but that the department head should be given authority to determine the organization within his department. This obviously requires authority in the Secretary to subdelegate.

Defendants next contend that statutory prerequisites to the establishment of a national marketing quota have not been complied with, on the ground that the Secretary did not properly publish in the Federal Register in 1954 a finding that the total supply of wheat for the marketing year beginning in such calendar year would exceed the normal supply for such marketing year by more than 20%. The findings of the Secretary, as published in 19 F.R. 3863, were that the total supply of wheat for the marketing year 1954-55 was 1,093 million bushels, that the normal supply of wheat for such marketing year was 1,063 million bushels, and that the former exceeded the latter by more than 20%. It is obvious that 1,093 million bushels does not exceed 1,063 million bushels by 20%. But the Federal Register published at 19 F.R. 4058 a correction indicating that the figure 1,093 million should have been 1,903 million. This correction was unsigned, while the findings as originally published were printed over the name of the Secretary. At the trial the government introduced in evidence a certified photostat copy of the document actually signed by the Secretary, which found the total supply of wheat to be 1,903 million bushels. De-

fendants contend that the published correction is insufficient because it was not published over the name of the Secretary, and that the certified copy of the original document signed by the Secretary, which was offered in evidence, was not admissible because improperly certified. Neither argument has any merit. The correction was duly published by the Federal Register, which had made the typographical error. It was not necessary that it be made over the name of the Secretary. The photostat of the original findings was certified to be "a true copy of a document in the official custody of the Archivist of the United States". The certification concluded: "In testimony whereof, I, Wayne C. Grover, Archivist of the United States, have hereunto caused the Seal of the National Archives to be affixed and my name subscribed by the Director, Federal Register Division of the National Archives, in the District of Columbia, this 25th day of May, 1955. Wayne C. Grover, Archivist of the United States, By B. R. Kennedy." The seal of the National Archives was affixed. Such certification is sufficient. 28 U.S.C.A. § 1733; 18 F.R. 1754, 44 C.F.R.1954 Supp. sec. 2.32; 40 U.S.C.A. § 486; 44 U.S.C.A. § 399. See also 44 U.S.C.A. § 391, 63 Stat. 377, 381; 40 U.S.C.A. § 486(d); 1954-55 Gov't Org. Manual 390; 44 U.S.C.A. § 399(b), 64 Stat. 585, 589. See also discussion supra on the question of certification of the Secretary's memoranda.

Defendants wholly failed to prove their allegations that wheat acreage allotments were not made in accordance with the regulations, and that the allotments of farmers who might be expected to vote "no" in the referendum were made unreasonably low to prevent their voting. Such evidence as defendants offered tended to prove the contrary, and I so find.

The action is properly brought in the name of the United States; the Secretary of Agriculture is not a necessary party plaintiff. Where a landowner brings suit to enjoin entry on his land, the Secretary is the proper de-

fendant, since the United States cannot be sued without its consent. Hawthorne v. Fisher, D.C.N.D.Tex, 33 F.Supp. 891. But those considerations do not apply here. "When the United States acts through the agency of a wholly owned corporation, it may sue in its own name for the protection of its interests, without the joinder of the corporation." Insurance Co. of North America v. U. S., 4 Cir., 159 F.2d 699, at page 702. A fortiori, it may do so here. See Usher v. U. S., 4 Cir., 146 F.2d 369; Rodgers v. U. S., 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3; Rodgers v. U. S., 6 Cir., 138 F.2d 992; U. S. v. Locke, D.C.M.D.Tenn., 56 F.Supp. 999; U. S. v. Biehunko, D.C.S. D.Tex., 55 F.Supp. 706; United States v. Morelock, D.C.D.Md., 124 F.Supp. at page 949.

■ It was not necessary to join as parties defendant all of the owners of the farms in question. The named defendants were the operators of the farms and were the persons who were preventing entry on the farms by the reporters.

■ Defendants argue that this suit must fail because there is no evidence that the Secretary of Agriculture requested that it be filed. 7 U.S.C.A. § 1376 [3] provides that "proceedings to collect the penalties" are to be filed upon the request of the Secretary. But this is not a proceeding to collect a penalty. No penalty has yet accrued. No penalty will accrue if defendants turn under, or pasture off, any wheat grown in excess of their quota, or cut it for hay or silage not later than 30 days before the harvest date, Reg. sec. 728.550 (r), or if they store such excess in accordance with Reg. sec. 728.582, or if they deliver such excess to the Secretary in accordance with Reg. sec. 728.583; and, of course, if

there is no farm marketing excess, there will be no penalty.

The measurement of the farms to determine the acreage planted to wheat in any year is necessary to determine whether the wheat acreage on the farm is within the farm marketing quota, whether 15 acres or less of wheat have been planted thereon, and whether the farm in question is a farm on which the normal production of the wheat acreage is less than 200 bushels, for which there are special provisions and exemptions. Reg. sec. 728.593, 728.594, 20 F. R. 1631. Measurement is also necessary to obtain other information required to carry out the general purposes of the Act. For example, the wheat acreage on a farm during the three preceding years is important in fixing the wheat acreage allotment for that farm. Reg. sec. 728.-516(a), 19 F.R. 3251. Information as to the total acreage planted to wheat, and the use made of the wheat, whether it was sold, consumed, turned under, pastured off, cut for hay or silage, stored, or delivered to the Secretary, is essential for determining the total supply of wheat and the normal supply of wheat and other facts which are the bases for various determinations by the Secretary. 7 U.S. C.A. §§ 1332, 1333, 1334, 1335, 1336.

The government contends that this suit is brought under the first sentence of sec. 1376, "specifically to enforce the provisions of" the Act, or under the last sentence of said section, which states that the remedies provided for therein "shall be in addition to, and not exclusive of, any of the remedies or penalties under existing law."

In support of its argument that the suit is brought under the first sentence of Sec. 1376, the government cites Sec.

---

3. Title 7 U.S.C.A. § 1376:
"The several district courts of the United States are vested with jurisdiction specifically to enforce the provisions of this chapter. If and when the Secretary shall so request, it shall be the duty of the several United States attorneys in their respective districts, under the direction of the Attorney General, to institute proceedings to collect the penalties provided in this chapter. The remedies and penalties provided for herein shall be in addition to, and not exclusive of, any of the remedies or penalties under existing law."

1374, which directs the Secretary to "provide, through the county and local committees, for measuring farms on which * * * wheat * * * is produced and for ascertaining whether the acreage planted for any year to any such commodity is in excess of the farm acreage allotment for such commodity for the farm * * *." Sec. 728.555 of the new Regulations directs the county committee to "provide for the measurement of all farms in the county having a 1955 wheat acreage allotment and any other farms in the county on which the committee has reason to believe there is wheat which could be available for harvest in 1955, regardless of its intended use, for the purposes of ascertaining with respect to each of such farms the acreage of wheat and whether such acreage is in excess of the farm wheat acreage allotment for 1955." Sec. 728.555(c) further provides that "a reporter shall visit each farm assigned to him for measurement and enter thereon if such entry will facilitate measurement".

It is true, as defendants contend, that the Act does not specifically authorize courts to issue injunctions or to restrain persons from violating the Act or the regulations or from interfering with reporters. Cf. U. S. v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290; U. S. v. Turner Dairy Co., 7 Cir., 162 F.2d 425, certiorari denied 332 U.S. 836, 68 S.Ct. 219, 92 L.Ed. 409. See United States v. Morelock, 124 F.Supp. at page 943. And even if the case comes under the first sentence of sec. 1376, I must be guided by general equitable principles in deciding whether to issue the requested injunction. Hecht Co. v. Bowles, 321 U. S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754; United States v. Morelock, D.C.D.Md., 124 F.Supp. at page 945. Cf. U. S. v. City and County of San Francisco, 310 U.S. 16, 31, 60 S.Ct. 749, 84 L.Ed. 1050. What are the equities in this case?

Defendants argue that the government has shown no irreparable injury, because an action to collect penalties, with attendant discovery under the F.R.Civ.P., furnishes the government an adequate remedy at law. But, as we have seen, it may be that no penalty will accrue, and it would be neither good law nor good sense to require the government to bring an action for a possible penalty, in order to obtain by way of discovery the information which the new Regulation sec. 728.555 specifically states shall be obtained by the reporter. Moreover, as we have also seen, measurement of the farms is necessary for other purposes of the Act besides enforcing penalties.

When the government acts to enforce a statute, or to make effective a declared policy of Congress, the standard of the public interest, and not the requirements of private litigation, measure the propriety and need for injunctive relief. Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 88 L.Ed. 754; Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789; In re Debs, 158 U.S. 564, 584, 15 S.Ct. 900, 39 L.Ed. 1092; U. S. v. City and County of San Francisco, 310 U.S. 16, 31, 60 S.Ct. 749, 84 L.Ed. 1050. That standard—the standard of the public interest—should be applied here.

Defendants also raise, as equitable considerations, the following points, which may be disposed of briefly:

a. That defendants and other owners of the farms have never applied for or participated in any benefit payments; that none of the wheat will be sold or moved in interstate commerce; that the wheat will be fed to defendants' cattle; and, therefore, "under these circumstances, the purpose of the Act is not interfered with by these defendants". However, defendants did not take the stand, so there is no evidence of the facts alleged, except evidence from the county office manager that defendants had never received any assistance or benefits through any of the programs, had never been issued any marketing cards, and had never cooperated with any of the programs. Moreover, these arguments were considered and rejected in Wickard v. Filburn, supra.

 b. That there is no need for entry on the farms, since aerial maps sufficient for the purpose are obtainable. Aerial maps are useful to show the outline of the fields, and when a farmer cooperates by designating the fields which are in wheat, and the reporter has the acreage of the fields from former years, much time may be saved. But those conditions do not obtain here, and neither the law nor the regulations nor common sense suggest that the government be required to obtain a series of aerial photographs taken from such a low altitude that one can tell whether a field is planted in wheat or barley.

 c. That the program under this Act disturbs the normal rotation of crops on defendants' land, which is encouraged by other programs sponsored by the Department of Agriculture. Since defendants did not take the stand, I can make no finding as to what the effect has been on whatever system of rotation defendants follow; the only evidence on the question is the testimony of a neighbor that defendants follow a three year rotation of wheat, hay and corn. I find from the evidence that the program under this Act disturbs the normal rotation of crops followed by some farmers; although it appeared from the evidence that many, and probably most farmers, are not disturbed, that some of the witnesses had not planted in non-quota years the full wheat acreage which they testified was necessary for proper rotation, and that a very little effort would suffice to work out a satisfactory system of rotation in most, if not all, cases. See Reg. sec. 728.516(c).

 d. That it is arbitrary, unreasonable and capricious to impose quotas on farmers in the United States at a time when wheat is being imported into the country. The amount of wheat being imported during the present marketing year is 3 million bushels, against a total domestic supply of nearly 2,000 million bushels. The amount imported is a drop in the bucket. Similar figures are predicted for 1955–56.

Such questions of policy are for the executive and for Congress, and not for the courts.

Whether the action be considered as brought under the first sentence or the last sentence of sec. 1376, the balance of equities is clearly in favor of granting the injunction which has been requested. I will sign an appropriate decree.