Lindsay B. SHAFER, Lewis Shafer, Joseph Shafer, and Lewis Shafer, Sr., Appellants,

v.

UNITED STATES of America, Appellee.

No. 7091.

United States Court of Appeals Fourth Circuit.

Argued Nov. 14, 1955.

Decided Jan. 4, 1956.

**126**

Wilson K. Barnes, Baltimore, Md., (John Wood Jr., and Stanford Hoff, Westminster, Md., on brief), for appellants.

Neil Brooks, Atty., Dept. of Justice, Washington, D. C. and George Cochran Doub, U. S. Atty., Baltimore, Md., (J. Stephen Doyle, Jr., Atty., Dept. of Justice, Washington, D. C., James H. Langrall, Asst. U. S. Atty., Baltimore, Md., and Donald A. Campbell, Atty., U. S. Dept. of Agriculture, Washington, D. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit is brought by the United States against certain wheat farmers in Carroll County, Maryland, who refused to permit representatives of the Secretary of Agriculture to enter their farms and measure wheat acreage therein under the provisions of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. § 1281 et seq. The purpose of the proposed entry was to ascertain whether the acreage planted to wheat on the farms was in excess of the wheat acreage allotment established under the statute. The purpose of the suit was to obtain an injunction enjoining the defendants from interfering with the entry of the agents on the farms and the measurement of the wheat acreage. The suit was resisted on numerous grounds, but after a hearing at which evidence was taken, the District Judge issued the injunction as prayed and the farmers appealed.

The general scheme of the statute as related to wheat was stated in Wickard v. Filburn, 317 U.S. 111, 115, 63 S.Ct. 82, 87 L.Ed. 122, to be the control of the volume of wheat moving in interstate commerce so as to avoid surpluses and shortages and the resulting abnormally low and high wheat prices which the farmers, without federal assistance, were unable to prevent. To this end the Secretary is required each year to ascertain and proclaim the national acreage allotment for the next crop of wheat; and this allotment is apportioned among the states, the state allotments are apportioned among the counties and the county allotments among the farms within the county. See §§ 1331, 1332, 1334(a), (b) and (c).

The Act also directs the Secretary to determine and proclaim a national marketing quota for wheat, whenever in any year the Secretary determines that the total supply of wheat will exceed the normal supply by more than twenty per cent. In such case the farm marketing quota for any crop of wheat is the actual production of the acreage planted in the farm less the amount produced on that acreage which is in excess of the farm acreage allotment. § 1340(1). A farm marketing quota on wheat is not applicable to a farm on which the acreage planted is not in excess of 15 acres. A producer is subject to a penalty on his farm marketing excess at the rate of 45 per centum of the parity price as of May 1 in any year in which quotas are in effect. The statute also provides for a referendum of farmers subject to the quota to determine whether they favor or oppose it and if more than one-third of the farmers voting oppose, the Secretary must suspend its operation—otherwise it goes into effect. §§ 1335(a), 1336, 1340(1, 2, 7).

If a farmer is dissatisfied with his marketing quota as determined by the County Committee, he may appeal to the Review Committee, and the decision of the Committee may be subject to an appeal to a District Court or a State Court §§ 1363, 1365.

The Secretary is required to provide through county and local committees for the measurement of the farms on which the crop is produced in order to ascertain

whether the acreage planted is in excess of the farm acreage allotment, and the Secretary is authorized to prescribe such regulations as are necessary for the enforcement of the statutory provisions. The Federal District Courts are vested with jurisdiction to enforce the provisions of the statute. The remedies and penalties provided therein are in addition to and not exclusive of any of the remedies or penalties under existing law. §§ 1374, 1375(b), 1376.

Pursuant to the statutory provisions the Secretary made a determination with respect to a national marketing quota and issued a proclamation thereof to be in effect with respect to the 1955–56 marketing year. He concluded that the total supply exceeded the normal supply by more than 20 per centum and therefore determined and proclaimed a national marketing quota for the year. A referendum of farmers was held in which 73.3% of the farmers voted in favor of the marketing quota program. 19 F.R. 3863, 4058, 5625.

The regulations promulgated by the statute in 1955 provide for the measurement by the County Committee of all farms having an allotment and also the farms where the Committee has reason to believe there is wheat available for harvest in 1955, regardless of its intended use. The purpose is to ascertain the acreage of wheat and whether it is in excess of the 1955 acreage allotment for the farm. The measurement is under the general supervision of the County Committee and a reporter is directed to visit each farm assigned to him for measurement and enter therein if such entry will facilitate the measurement. The reporters are employees of the County Committee and the persons selected are determined to be qualified to perform the duties. A reporter may be assisted in the measurement by another reporter or by a member of the County Committee or by any employee of the Department of Agriculture when so directed by the Deputy Administrator. See 728.555 of Wheat Marketing Quota Regulations for the 1955 crop, 20 F.R. 1621. •

The evidence taken at the hearing shows that a reporter designated by the County Committee to measure the acreage of the farmer appellants, together with the Vice Chairman of the County Committee and an employee of the Department of Agriculture assigned by the Deputy Administrator to assist in the measurement, attempted in May, 1955 to enter the farms and make the measurement, but were prevented from doing so by the appellants who threatened to shoot them and inflict bodily harm if they entered the farms for this purpose. The agents testified that they could see some of the cultivated areas from the highway and could see wheat growing on the farms, one of which was 226 acres and the other 168 acres, but they could not see all of the cultivated areas and entry upon the farms was necessary to make the measurements. The agents had an aerial photo of a large area of the county, made in 1952, which included the appellants' farm and they desired to check this photo against the actual acreage on which wheat was grown. The county manager testified that the defendants had never received any assistance or benefit under the statute and had never cooperated with any of the programs. The farmers themselves did not testify. The District Judge accepted as true the testimony offered by the Government and granted an injunction enjoining the defendants from interfering with the agents in the measurement of the farms and the entry thereon of duly authorized employees of the County Committee or of the Department of Agriculture, provided that the number of persons entering on the farms should not exceed three, and that the entry on the farms for the purpose of measurement should be limited to two visits.

Numerous objections were made by the appellants to the issuance of the injunction in the District Court and on this appeal, all of which were carefully considered in the opinion of the District Court. See United States v. Shafer, D.C. Md., 132 F.Supp. 659. They contend that the statute does not provide for entry on

the farm and that the regulations,[1] which were issued by the Secretary and published on March 18, 1955 and provide for the measurement of the farm and for the entry of a reporter if such entry will facilitate measurements, do not provide for injunctive procedure in aid of entry. It is said that during the debate in the Senate [2] on the passage of the Act reference was made to the measurement of land under the Soil Conservation Act, 16 U.S.C.A. § 590a et seq., which provides for entry only by consent, and that until the passage of the regulations in 1955 the Administrative practice during the three years when wheat quotas were in effect, did not involve entry without consent; [3] and hence it must be assumed that the statute did not contemplate such entry and that the regulations in this respect are invalid.

There is no reasonable basis for this argument. The statute expressly authorizes measurement and without it the purpose of the statute to control the production of wheat would be frustrated. Enforcement of the Act without the right of entry for purposes of measurement would be impossible, as is shown in the pending case. The statute is so clear on this point that there is no excuse for resorting to the legislative history; see Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 492, 67 S.Ct. 789, 91 L.Ed. 1040, and in any event the debate in the Senate contains nothing inconsistent with this interpretation. When it was found by an earlier experience in Carroll County, Maryland, which is described in the opinion of the District Court in United States v. Morelock, D.C.Md., 124 F.Supp. 932, that specific authority for entry upon the farm was needed, the regulations of 1955 were promulgated. We have no doubt that they were within the competency of the Secretary.

The authority of the court to issue an injunction under the circumstances of this case to aid in the enforcement of the Act is also beyond doubt. It is contended that the Government has not shown irreparable injury and that it has an adequate remedy at law in the provisions of Rule 34, Fed.Rules Civ. Proc. 28 U.S.C.A., relating to discovery, which permits entry upon land for inspection and measurement if good cause is shown in a civil action. The United States, however, is not bound to conform with the requirements of private litigation when it seeks the aid of the courts to give effect to the policy of Congress as manifested in a statute. It is a familiar doctrine that an injunction is an appropriate means for the enforcement of an Act of Congress when it is in the public interest. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L. Ed. 754; Virginia R. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S. Ct. 592, 81 L.Ed. 789.

The appellants go so far as to say that the regulations are unconstitutional to the extent that they authorize entry upon the farm without the consent of the farmer. Specifically it is said that the regulations violate the Fourth, Fifth and Tenth Amendments to the Federal Constitution; the Fourth Amendment because the regulations violate the prohibition against unreasonable searches and seizures; the Fifth Amendment because it forbids the deprivation of property without due process of law as well as compulsory self incrimination; and the Tenth because it reserves to the states the powers not conferred upon the Federal Government, including the power to regulate intrastate commerce. Little need be said in reply to these contentions. There is no violation of the Fourth Amendment because there is no search or seizure of the persons, houses or effects of the farmers but only an in-

1. See 20 F.R. 1621.

2. 83 Cong.Rec. 1858.

3. In prior years since 1938 wheat quotas were in effect only in 1941–42, 1942–43, 1954–55. The right of entry was asserted in 1954–55. See United States v. Morelock, D.C.Md., 124 F.Supp. 932.

spection of open fields. Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898; Janney v. United States, 4 Cir., 206 F.2d 601. Inspection of places of business under a statute within the power of Congress does not violate this Amendment. United States v. Crescent-Kelvan Co., 3 Cir., 164 F.2d 582; Currin v. Wallace, 306 U.S. 1, 12, 59 S.Ct. 379, 83 L.Ed. 441.

As to the Fifth Amendment, it is sufficient to point out that the instant suit is not a criminal prosecution. The Act provides only for civil penalties and the farmers are not compelled to give evidence against themselves. Rodgers v. United States, 332 U.S. 371, 374, 68 S.Ct. 5, 92 L.Ed. 3. Furthermore the Act does not deprive the farmer of his property without due process of law. This question was settled by the Supreme Court in Wickard v. Filburn, 317 U.S. 111, 63 S. Ct. 82, 87 L.Ed. 122, which held that a statute does not violate the amendment merely because it is deemed in a particular case to work an inequitable result and that the Agricultural Adjustment Act lies within the power of Congress to regulate interstate commerce although it regulates production not intended for commerce but wholly for consumption on the farm. Such production has an indirect effect upon such commerce even although the amount produced in a particular instance may be trivial. Hence there is no violation of the Tenth Amendment. See also Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328.

The validity of the regulations of 1955 principally relied on by the Government[4] is attacked on the ground that they were not promulgated by Ezra Taft Benson, Secretary of Agriculture himself, in accordance with § 1375 of the statute, but by True D. Morse, Acting Secretary. The regulations specifically provide that the reporter, assisted if need be by other authorized agents of the Secretary, shall visit and measure each farm assigned to him and enter thereon if entry will facil-itate the measurement. This circumstance, however, presents no infirmity in the regulations. It is provided in 5 U. S.C.A. § 4 that in case of the death, resignation, absence or sickness of the head of any department, the first or sole assistant thereof shall perform the duties of such head. It is also provided that the Under-Secretary of Agriculture is authorized to exercise the functions and perform the duties of the First Assistant of the Secretary of Agriculture within the meaning of § 4 and to perform such other duties as may be required by law or prescribed by the Secretary. 5 U.S.C. A. § 514(b). An Assistant Secretary of Agriculture has such duties as are assigned to him by the Secretary. See 5 U.S.C.A. § 517 and Reorganization Plan No. 2 of 1953, 18 F.R. 3219, 5 U.S.C.A. § 511 note. It is also provided in Executive Order 10481, 18 F.R. 4944, U.S. Code Congressional and Administrative News 1953, p. 1052, which was issued pursuant to 5 U.S.C.A. § 6, that in case of absence, sickness, &c. of the Secretary of Agriculture, the Under-Secretary of Agriculture and the Assistant Secretaries of Agriculture shall perform the duties of the office of the Secretary of Agriculture.

The Supreme Court has pointed out that in many situations it is impossible for a head of a department to perform in person all the duties imposed upon him by his office and consequently statutes have created the office of Assistant Secretaries for the various departments. The court said that it would be subversive of the purposes of these statutes if their acts were held to be of no force until ratified by the head of the Department. Parish v. United States, 100 U.S. 500, 504, 25 L.Ed. 763; Morgan v. United States, 298 U.S. 468, 479, 56 S. Ct. 906, 80 L.Ed. 1288. Furthermore, there is a presumption in the absence of clear evidence to the contrary that official action taken has been duly exercised; United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed.

4. §§ 728.550–728.597, 20 F.R. 1621; 728.510–728.526, 19 F.R. 3249.

131; and the publication of a document in the Federal Register creates a rebuttable presumption of validity. See 44 U.S.C.A. § 307.

The Secretary of Agriculture was not a necessary party to the suit as claimed by the appellants. It is sufficient that suit was brought in the name of the United States by the United States Attorney. See Usher v. United States, 4 Cir., 146 F.2d 369; Insurance Co. of North America v. United States, 4 Cir., 159 F.2d 699; United States v. Allied Oil Corp., 341 U.S. 1, 5, 71 S.Ct. 544, 95 L.Ed. 697; McKay v. Rogers, 10 Cir., 82 F.2d 795, 798; 28 U.S.C. § 507(a) (2).

Affirmed.